# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
### PADUCAH

| | |
|---|---|
| WEST END KIDS ACADEMY, LLC, ) <br> ) <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) Case No. 5:20-cv-00172 (TBR) <br> WEST BEND MUTUAL INSURANCE ) <br> COMPANY, ) <br> ) <br> *Defendant.* ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant West Bend Mutual Insurance Company's Motion for Judgment on the Pleadings, Mot. for J., Dkt. 12. Plaintiff West End Kids Academy, LLC has responded, Pl.'s Resp., Dkt. 17. West Bend has replied, Def.'s Reply, Dkt. 18. As such, this matter is ripe for adjudication. For the reasons that follow, Defendant's Motion for Judgment on the Pleadings, Dkt. 12, is **GRANTED**.

### I.   FACTUAL BACKGROUND

The facts are undisputed. West End Kids operates a childcare facility in McCracken County, Kentucky. *See* Compl., Dkt. 1-1, ¶ 4. West Bend issued West End Kids an insurance policy that took effect on January 15, 2020. *See id.* ¶ 6; *see also* Policy, Dkt. 1-6. The insurance policy provided coverage for, among other things, loss of business income and extra expenses sustained as a result of operations being temporarily shut down due to an outbreak of a communicable disease. *See* Compl. ¶ 8; *see also* Policy at 31. West End Kids agreed to those terms and began paying its insurance premiums. *See* Compl. ¶ 7.

Shortly thereafter, Covid-19 hit the United States and businesses across the country were forced to temporarily shutter their doors. West End Kids was no exception. On March 18, 2020,

the Commonwealth of Kentucky ordered registered childcare programs to shut down within two days. *See* Order to Close, Dkt. 12-1, at 1. West End Kids, in compliance with state orders, suspended its operations and remained closed for approximately three months, reopening in June of 2020. Compl. ¶ 9; *see also* Resp. at 2.

West End Kids subsequently filed an insurance claim for the loss of business income and extra expenses resulting from its closure during Covid-19. *See* Compl. ¶ 10. West Bend determined that West End Kids' insurance policy did not provide coverage for their claims. *See id.*

West End Kids filed a complaint in McCracken Circuit Court, asserting the following claims against West Bend: (1) loss of business income and extra expenses, Compl. ¶ 10, (2) breach of contract that resulted in pecuniary losses, Compl. ¶ 11, (3) willful and malicious actions, Compl. ¶ 12, (4) bad faith under common law, Compl. ¶ 12, (5) violation of the Unfair Claims Settlement Practices Act, Kentucky Revised Code § 304.12-230, Compl. ¶ 12, and (6) punitive damages, Compl. ¶ 12. The case was removed to federal court on October 22, 2020, on the basis of diversity jurisdiction. *See* Notice of Removal, Dkt. 1.

## II.     LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The Court analyzes a Rule 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion for failure to state a claim. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Therefore, to survive a Rule 12(c) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

2

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,' "it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The factual allegations in the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III.   DISCUSSION

In asserting its claims against West Bend, West End Kids relies only on the Communicable Disease provision of its insurance policy.[1]  *See* Compl. ¶¶ 10–12; *see also* Resp. at 4. West Bend responds, arguing that the Communicable Disease provision does not apply.[2] *See* Mot. for J. at 17–24. The "Communicable Disease Business Income and Extra Expense Coverage" provision states:

> You may extend this insurance to apply to the actual loss of Business Income or Extra Expense that you sustain as the result of your "operations" being temporarily shut down or suspended as ordered by a local, state, or federal board of health of similar governmental board that has jurisdiction over your "operations[.]" The shutdown or suspension must be due to an outbreak of a "communicable disease" or a "water-borne pathogen" at the insured premises as described in the Declarations.

Policy at 31.

---

[1] Although West End Kids' insurance policy contains separate coverage provisions for "Business Income," "Extra Expense," and "Civil Authority," West End Kids does not invoke any of these provisions in its lawsuit against West Bend. *See* Compl.; *see also* Policy. Rather, West End Kids makes clear that it is "the communicable disease coverage [that] is the basis of this suit." Resp. at 4. West Bend, "out of an abundance of caution," Mot. for J. at 16, addresses why these other provisions do not cover West End Kids' losses. Because Plaintiff does not invoke the other three policy provisions, the Court will not consider their applicability in this case.

[2] The insurance policy contains a "Virus Exclusion," which specifies that West Bend will not pay for the losses or damage caused by "any virus," *see* Policy at 55. But West Bend only asserts that the Virus Exclusion applies to the Business Income, Extra Expense, and Civil Authority coverage. *See* Mot. for J. at 22. West Bend never argues that the Virus Exclusion applies to the Communicable Disease provision. *See id.* West End Kids states that the Virus Exclusion "does not apply to the communicable disease coverage." Resp. at 4. Because the parties do not dispute the applicability of the Virus Exclusion to the communicable disease provision, the Court does not consider that exclusion.

The parties dispute the meaning of the phrase "*due to* an outbreak . . . *at the insured premises*." *See* Mot. for J. at ; *see also* Resp. at 5–6. (emphasis added)

The Court first addresses the scope of the phrase "due to." West Bend, citing Merriam-Webster's Dictionary, asserts that "due to" means "as a result of: because of." Mot. for J. at 19. West Bend maintains that because of the phrase "due to," the policy requires causation between the outbreak at the insured premises and the ordered shutdown. *See id.* at 20. And according to West Bend, West End Kids cannot satisfy this requirement because it does not allege that the closure orders were a result of an outbreak at its business in particular. *See id.* West End Kids, for its part, seems to implicitly accept West Bend's definition of "due to," arguing instead that their claims for coverage should have been granted because the Commonwealth ordered closures "due to the pervasive nature" Covid-19. *See* Resp. at 5–6.

The Court accepts West Bend's definition of "due to"—the phrase indicates that, for the provision to apply, the closure orders must have been a result of an outbreak at the insured premises. This meaning conforms with the plain meaning of the phrase, *see, e.g.*, *Due to*, WEBSTER'S II NEW COLLEGE DICTIONARY (2001) ("Caused by: attributable to[;] [b]ecause of."), and is consistent with how other courts have interpreted the phrase, *see, e.g.*, *Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*, No. 20-CV-720-JPS-JPS, 2021 WL 1169565, at *9 (E.D. Wis. Mar. 26, 2021). Adopting this definition, however, is not fatal to West End Kids' claim. Of course, this case can still proceed if West End Kids is able to allege that it was ordered to shut down operations due to an outbreak *at the insured premises*. And indeed, it's that last phrase that is the real gravamen of the parties' disagreement.

The Court therefore turns to the meaning of "at the insured premises." West Bend contends that this language means "within the four walls of the insured premises." Mot. for J. at

4

18. Proceeding under this definition, West Bend then argues that West End Kids' claims fail for two reasons: first, because the government shutdown was not a result of an outbreak that occurred at West End Kids' facility, and second, because West End Kids does not allege that any of its staff or enrollees were diagnosed with Covid-19. *Id.* at 17–19. West End Kids rejects West Bend's interpretation of the phrase, arguing instead that its claims were improperly denied because the closure decisions were made on a statewide basis. Resp. at 5. West End Kids also maintains that that it is not required to plead that specific infections occurred at its premises. *Id.* at 5–6.

The Court interprets the phrase "at the insured premises" to mean the buildings at which West End Kids' business operated and those buildings' grounds. As an initial matter, the communicable disease provision specifies that the insured premises are "described in the Declarations." Policy at 31. Although the Declarations never explicitly define the insured premises, they do describe the location as 135 Memorial Dr. Paducah, KY, which is West End Kids' address. *Id.* at 4. This description supports the conclusion that the communicable disease provision limits recovery to outbreaks that occurred specifically at the insured premises. Furthermore, this interpretation of the phrase is consistent with the words' plain and ordinary meaning. *See Premises*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A house or building, along with its grounds; esp., the buildings and land that a shop, restaurant, company, etc. uses").

Accordingly, to survive a motion for judgment on the pleadings West End Kids must allege that the shutdown was "due to an outbreak . . . at the insured premises;" that is, that the shutdown resulted from an outbreak at West End Kids' buildings or grounds. West End Kids does not make such an allegation, nor can it.

West End Kids focuses on the statewide nature of the closure orders, arguing that the requirements of the communicable disease provision are met because the government determined that there was an outbreak justifying closure of West End Kids. *See* Resp. at 5–6. In effect, West End Kids argues that the Commonwealth issued its closure orders because Covid-19 was *everywhere*. But that misses the point of the policy language. The communicable disease provision specifies that closure orders must have been *due to* an outbreak *at the insured premises*. In its argument, West End Kids concedes that the closure orders were not the result of any outbreak specifically at the insured premises. For that reason, the Court finds that the terms of the insurance policy preclude West End Kids' claims for communicable disease coverage.

The parties also debate whether West End Kids needs to plead that a member of its staff or one of its enrollees tested positive for Covid-19. West End Kids notes here that tests for Covid-19 were not readily available in March of 2020. Resp. at 5. Because of the lack of tests, the Court could reasonably infer that someone was exposed to Covid-19 at West End Kids' premises. However, as discussed above, West End Kids still fails to allege that the Commonwealth issued its closure orders in response to an outbreak at the insured premises. Thus, the Court determines that the communicable disease coverage does not cover West End Kids' closure. This approach is consistent with how other district courts have interpreted the same policy language. *See, e.g.*, *Paradigm Care & Enrichment Ctr., LLC*, 2021 WL 1169565, at \*9 ("[Even though] Plaintiffs alleged that one active enrollee . . . tested positive for COVID-19 shortly after [the facility] closed[,] Plaintiffs failed to allege that the government shut down their respective facilities *due to an outbreak* of COVID-19 at the same.").

In sum, West End Kids' argument regarding the communicable disease provision fails to plausibly allege that West Bend breached the insurance policies by denying West End Kids' claims.

Lastly, in the event that the Court is persuaded by West Bend's arguments in favor of a judgment on the pleadings, West End Kids asks for leave to amend its complaint. *See* Resp. at 7. But because allowing West End Kids to amend its complaint would not change the fact that the closure orders were the result of the broader Covid-19 pandemic, not an outbreak at the insured premises, the Court denies this request as futile. West Bend's motion for judgment on the pleadings is granted.

### IV. CONCLUSION

For the above stated reasons, **IT IS HEREBY ORDERED** that West Bend's Motion for Judgment on the Pleadings, Dkt. 12, is **GRANTED**.

**IT IS SO ORDERED**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

September 21, 2021